# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALDENE NICHOLE BAUGH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Civil Action No. 12-918 <br><br> **ELECTRONICALLY FILED** |

## **MEMORANDUM OPINION**

I.  **INTRODUCTION**

Waldene Nichole Baugh ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 – 433, 1381 – 1383f ("Act").  This matter comes before the Court upon cross-motions for summary judgment.  (ECF Nos. 10, 12).  The record has been developed at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment will be DENIED, and Defendant's Motion for Summary Judgment will be GRANTED.

## II.   PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration on December 8, 2009, claiming an inability to work due to disability beginning January 10, 2009. (R. at 145 – 53)[1]. Plaintiff was initially denied benefits on June 14, 2010. (R. at 75 – 98). A hearing was scheduled for July 25, 2011. (R. at 35 – 57). Plaintiff appeared to testify, and was represented by counsel. (R. at 35 – 57). A vocational expert also testified. (R. at 35 – 57). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on September 19, 2011. (R. at 14 – 34). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on May 7, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (R. at 1 – 6).

Plaintiff filed her Complaint in this Court on July 6, 2012. (ECF No. 3). Defendant filed his Answer on September 6, 2012. (ECF No. 7). Cross-motions for summary judgment followed.

## III.   STATEMENT OF THE CASE

In his decision denying DIB and SSI to Plaintiff, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2010;
2. The claimant has not engaged in substantial gainful activity since January 10, 2009, the alleged onset date;
3. The claimant has the following severe impairments: degenerative disc disease, obesity, sleep apnea, bipolar disorder, panic disorder, and post-traumatic stress disorder;
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she could sit for 45 minutes to an hour, she would stand or walk for 15 minutes per hour, and she would need to change between sit and stand such as that; she could not climb, stoop, crouch, kneel,

---

[1]   Citations to ECF Nos. 8 – 8-16, the Record, *hereinafter*, "R. at __."

2

or crawl; she could not do pushing and pulling of 10 pounds at the sedentary exertional level; she would be limited to simple, routine, repetitive tasks not performed in a fast-paced production environment; she would be limited to low stress jobs and simple work decisions; and she would be limited to occasional interaction with supervisors, coworkers, and the general public;
6. The claimant is unable to perform any past relevant work;
7. The claimant was born on December 5, 1964 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45 – 49;
8. The claimant has at least a high school education and is able to communicate in English;
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills;
10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and,
11. The claimant has not been under a disability, as defined in the Social Security Act, from January 10, 2009, through the date of this decision.

(R. at 18 – 30).

## IV. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F. 3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

V. **DISCUSSION**

Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred in failing to find Plaintiff's subjective complaints of pain and limitation fully credible, and by failing to give controlling weight to the conclusions of a treating physician as it pertained to Plaintiff's ability to engage in full-time employment. (ECF No. 13 at 12, 17). Defendant counters by claiming that the ALJ properly discredited Plaintiff's subjective complaints by pointing out numerous inconsistencies in her personal accounts of pain, limitation, and drug use at her hearing and in the medical record. (ECF No. 11 at 14). Defendant further asserts that substantial evidence supported the ALJ's decision not to give controlling weight to a treating physician's conclusion that Plaintiff could not engage in full-time employment based upon inconsistencies within the medical record. (ECF No. 16 at 2).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ adequately met his responsibilities under the law.

A. *Subjective Complaints*

Plaintiff first takes issue with the ALJ's use of her hearing testimony to claim that inconsistencies between the testimony and the medical record – in various respects – diminished Plaintiff's credibility regarding her complaints of pain. Plaintiff believes that her testimony was taken out of context, and that she at no pointed attempted to deny or minimize her past drug abuse. (ECF No. 13 at 12 – 17). With respect to her history of drug abuse, the medical record contains numerous findings. On February 10, 2009, Plaintiff reported to psychiatrist Gerard R. Francis, M.D. during a psychiatric evaluation update at Paoletta Counseling Services that she had a history of alcohol and cocaine abuse, allegedly ending in December 2007. (R. at 278). She had two DUI's, and was incarcerated for approximately 6 – 8 months for forging a signature to obtain pain medications. (R. at 278). She was on probation until July 2009. (R. at 278).

Notes from Horizon Pain Management Center noted Plaintiff's past history of prescription drug abuse in April 2009. (R. at 524). Plaintiff claimed at that time that she was not seeking pain medications from more than one provider. (R. at 524). Following a conversation with Dr. El-Kadi, the pain clinic physician felt that narcotic pain medication would not be an appropriate treatment for Plaintiff's alleged pain, and that Plaintiff should see an addiction specialist. (R. at 526). Plaintiff was discharged from pain management at Office Based Anesthesia Solutions in July 2009 when it was discovered that she was misusing her pain medications. (R. at 645). She had initially informed her physician there that she had never had drug abuse problems in the past. (R. at 651).

In treatment notes dated August 3, 2009, Plaintiff's primary care physician, James Liszewski, M.D., indicated that Plaintiff had been discharged from treatment at Office Based Anesthesia Solutions due to abuse of Percocet. (R. at 355). Dr. Liszewski noted that Plaintiff

7

had prescription medication abuse problems with other doctors, as well as himself. (R. at 355). Plaintiff was noted to be having issues with her Percocet use by Dr. Liszewski in March, April, and June 2009, having asked for refills on her prescriptions before due, and having sought prescriptions from multiple doctors at the same time. (R. at 462, 469 – 70). At that time, Dr. Liszewski advised Plaintiff only to seek prescription medication from the pain clinic she was attending. (R. at 469 – 70). Plaintiff requested prescription pain medication from Dr. Liszewski in March and November 2010, but Dr. Liszewski refused to provide medication because of her history of abuse. (R. at 569, 601). At that same time, Plaintiff was already receiving pain medication from her neurosurgeon. (R. at 569).

The ALJ did not deny benefits to Plaintiff because she had a drug abuse history. He did attribute less weight to her subjective complaints because she made inconsistent statements about – among other things – her past drug abuse. At Plaintiff's hearing the ALJ asked:

Q. All right. Now, over the course of your whole life, have you ever had any trouble with any kind of problems with drugs or alcohol?

A. Yes, I have.

Q. Would you tell me about that?

A. It was years ago. And just having some problems being depressed.

Q. What was your pattern of using and what substances were you using years ago?

A. It was alcohol and pills.

…

Q. Did you ever have any kind – did any doctors or nurses or any providers ever express any concern about how you were using the pain pills you had or, you know, any issues like losing prescriptions, getting pain medications from two different doctors, testing

8

> positive for things you shouldn't test positive or did you ever run into any issues like that with any doctors?
>
> A. No. No, sir.
>
> …
>
> Q. Did you ever have any issues are [sic] Dr. Kunkle?
>
> A. I don't recall.

(R. at 41, 43). As noted by the ALJ, Plaintiff's personal testimony was less than candid. She was requesting, and being rejected for, pain pills into 2010, she abused cocaine in addition to alcohol and pills at one point in her life, she was discharged from treatment by Office Based Anesthesia Solutions for misuse of pain medications, and multiple other doctors had ceased providing such medications for Plaintiff. (R. at 24 – 25). While Plaintiff did admit to criminal charges for drug abuse in the past, this hardly absolves her for failing to be forthright with the ALJ during his earlier questioning. (R. at 49).

An ALJ should accord subjective complaints similar treatment as objective medical reports, and weigh the evidence before him. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 122 (3d Cir. 2000). This necessitates a determination by the ALJ as to the extent to which a claimant is accurately stating the degree of his or her disability. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)). When medical evidence provides objective support for subjective complaints, the ALJ can only reject such a complaint by providing contrary objective medical evidence. *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). However, while subjective complaints may support a disability determination, allegations must be consistent with the objective medical evidence on record. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Burnett*, 220 F.3d at 122.

Here, the ALJ clearly analyzed the record, compared Plaintiff's statements to the record, and found inconsistencies that he believed weakened her credibility – reasonably leading to the conclusion that Plaintiff was exaggerating her claims. It is the province of the ALJ to make these credibility determinations, and the Court will ordinarily defer to the ALJ's findings. *Reefer v. Barnhart*, 326 F. 3d 376, 380 (3d Cir. 2003). Presently, the ALJ's decision rationale provided substantial evidence to support his doubt as to the veracity of Plaintiff's complaints. The Court will not, therefore, disturb the ALJ's findings.

Yet, Plaintiff further argues that the ALJ's allegedly inappropriate characterization of Plaintiff's testimony also belied the objective medical evidence that Plaintiff required no less than three surgical interventions for her back pain, as well as participation in pain management and physical therapy. (ECF No. 13 at 12 – 17). The objective medical record does show a history of spinal defects. A CT scan and x-ray of Plaintiff's lumbar spine on October 9, 2008 showed mild disc bulging, vacuum disc formation and advanced degenerative change involving the L5-S1 disc space with broad-based disc bulging, grade 1 anterior spondylolisthesis of L5 on S1, and pars defects at L5-S1. (R. at 219 – 20).

To treat these conditions, neurosurgeon Matt El-Kadi, M.D. performed an L4-S1 pedicle screw fixation and laminectomy on January 2, 2009. (R. at 244 – 48, 262 – 64). Following the surgery, Plaintiff continued to have some degree of back and leg pain. (R. at 284, 286). While Plaintiff was receiving treatment at a pain clinic, she had failed to follow Dr. El-Kadi's instructions to attend physical therapy following surgery. (R. at 284, 286, 288). Dr. El-Kadi initially provided Plaintiff with prescription pain medication, but refused requests to continue to do so in the months following Plaintiff's surgery. (R. at 284, 286, 288).

Plaintiff reported a series of falls at home following her first surgery, and one while shopping on or about July 9, 2009.  (R. at 284, 290, 319, 346).  Subsequent MRI studies of Plaintiff's back showed mild disc bulging in Plaintiff's thoracic spine, and more pronounced disc bulging in the lumbar spine with accompanying stenosis.  (R. at 302).  Plaintiff was taken to the hospital on August 3, 2009 after a fall in her home.  (R. at 355).  Following an imaging study of Plaintiff's spine, it was determined that Plaintiff had nonunion at the L4-S1 levels of the spine, and anterolesthesis with broken hardware.  (R. at 358, 386).  She was to undergo revision surgery to address these issues.  (R. at 358).  Due to difficulty ambulating after her latest fall, even with the assistance of a walker, Plaintiff was admitted to a nursing home until the time of her revision surgery.  (R. at 358, 371).  Dr. Liszewski projected that, even with surgery, Plaintiff would only experience a 50% reduction in pain in her back and legs.  (R. at 372).

Richard M. Spiro, M.D. performed the second operation – a posterior lumbar fusion – on October 20, 2009.  (R. at 425 – 30, 435 – 37).  On December 2, 2009, Plaintiff followed-up with Dr. Spiro, who observed Plaintiff's low back pain to have resolved, with great improvement in her leg pain.  (R. at 454).  Plaintiff had some pain in her left buttocks and groin.  (R. at 454).  Dr. Spiro was pleased with the results.  (R. at 454).  Around the same time, Dr. Liszewski made similar findings, and noted that Plaintiff could ambulate without an assistive device, except over long distances.  (R. at 461).

A record of treatment at Horizon Pain Management Center spanning April 2009 through September 2010 documented consistent complaints of severe pain in Plaintiff's back and legs.  (R. at 519 – 39).  Despite her complaints of pain, records show that Plaintiff did not attend physical therapy following her first surgery.  (R. at 530).  Plaintiff was also generally noted to be well-appearing and in no acute distress.  (R. at 519, 523, 525, 531).  She was not provided

11

narcotic pain medications, but the pain clinic did administer injections for Plaintiff's pain. (R. at 519).

Similarly, a treatment history spanning April through July 2009 with Frank A. Kunkel, M.D. of Office Based Anesthesia Solutions also documented continuing complaints of back and leg pain. (R. at 645 – 53). Dr. Kunkel provided Plaintiff with injections and prescription pain medication to treat her complaints of pain. (R. at 645 – 53). When Plaintiff began treatment with Dr. Kunkel she informed him that she had never experienced problems with narcotic medication in her past, nor did she abuse such medication. (R. at 651). Plaintiff was observed to be in no apparent distress. (R. at 652). Plaintiff was discharged from Dr. Kunkel's care in July 2009 after he discovered that she had been misusing her prescription pain medication in violation of their narcotic treatment agreement. (R. at 645).

Dr. Liszewski recommended that Plaintiff increase her physical activity on a regular basis. (R. at 602). However, Plaintiff complained of pain in her back and continuing into her leg. (R. at 601). Plaintiff was able to walk without a cane. (R. at 601). She requested prescription pain medication in March 2010, but Dr. Liszewski refused to provide medication because of her history of abuse. (R. at 601). At a May 12, 2010 Psychological Disability Evaluation, Robert P. Craig, Ph.D. observed Plaintiff drove herself to the evaluation, and ambulated with ease. (R. at 483).

On April 27, 2011, Plaintiff attended a consultation with Dr. Spiro as a result of continued complaints of back pain and MRI results demonstrating postoperative changes in her fusion construct, and well as degenerative changes at the L3-L4 level of the spine with a significant amount of accompanying stenosis and a possible disc herniation. (R. at 616). Plaintiff was noted to have been doing well until approximately May 2010, when she noticed a

12

return of back discomfort. (R. at 618). A third operation was scheduled for July 2011. (R. at 616).

On July 7, 2011, Plaintiff underwent a third operation with Dr. Spiro. (R. at 662). At that time, he removed her old lumbar instrumentation and replaced it, completing an L3-L4 decompression and fusion, as well. (R. at 662). Following the procedure, Plaintiff had marked improvement in her back and leg pain. (R. at 662). Plaintiff was noted to be doing very well, and Dr. Spiro was hopeful that her residual discomfort would dissipate in time. (R. at 662).

While the aforementioned medical record certainly demonstrates that Plaintiff experienced pain and limitation necessitating surgical intervention, the ALJ did not fully credit Plaintiff's subjective complaints because they were frequently inconsistent with her treatment history. For instance, the ALJ asked Plaintiff during her hearing:

Q. And did the [third] back surgery help at all?

A. It's the same as it was like when I had surgery, before I had surgery.

(R. at 41). As pointed out by the ALJ, this stands in contrast to Dr. Spiro's statement that Plaintiff's pain improved markedly following her third surgery, despite some residual pain in the back and legs. (R. at 24).

Additionally, while at her hearing Plaintiff indicated that she required the use of a cane to ambulate, however, the ALJ made note of several portions of the record wherein Plaintiff was noted to be capable of ambulating without an assistive device. (R. at 21, 48). Plaintiff was capable of driving independently, and lived independently with her cousin, helping care for her cousin and performing some household chores. (R. at 23, 26). Despite frequently reporting severe pain, Plaintiff was usually noted to appear in no acute distress. (R. at 24). Plaintiff also

failed to follow through with the recommended physical therapy after her first surgery. (R. at 24).

As found by the ALJ in his discussion, not only are there inconsistencies between Plaintiff's testimony and the record, but the record – generally – does not demonstrate ongoing inability to perform work of the type provided for in the ALJ's residual functional capacity ("RFC") assessment. No limitations findings were included by any of Plaintiff's treating sources throughout her treatment, and despite frequent complaints of pain, physical examinations showed relatively normal neurological functioning and strength in the extremities. (R. at 24 – 27). Moreover, Plaintiff was encouraged to engage in a more active lifestyle. (R. at 24 – 27).

As above, the ALJ considered Plaintiff's subjective complaints and weighed them against the objective medical record. He reasonably concluded that the evidence did not support the degree of pain and limitation alleged by Plaintiff. Substantial evidence, therefore, supported the ALJ's credibility determination.

### A. *Treating Physician Opinion*

Plaintiff last argues that the ALJ had no basis for rejecting the functional limitation findings made by her long treating primary care physician, Dr. Liszewski, which provided limitations that precluded full-time work, as well as an explicit statement that Plaintiff could not maintain full-time employment. (ECF No. 13 at 17 – 20).

On December 8, 2009, Dr. Liszewski indicated in a treatment note following Plaintiff's second surgery that he felt she would not be a good candidate for full-time employment due to a combination of mental and physical disorders. (R. at 461). Several years later, on May 16, 2011, Dr. Liszewski completed an assessment of Plaintiff's ability to engage in work-related activities. (R. at 514 – 16). He indicated that Plaintiff could not do any lifting, but could stand

14

and walk for 2 hours of an 8 hour workday and could sit for 6 hours. (R. at 514 – 16). She would need to be able to alternate positions. (R. at 514 – 16). She could never climb, balance, stoop, crouch, kneel, or crawl. (R. at 514 – 16). Dr. Liszewski concluded that Plaintiff would be incapable of maintaining full-time employment due to her back pain and inability to sit for prolonged periods. (R. at 514 – 16). He felt that if she were to work, Plaintiff would miss more than five days of work, per month. (R. at 514 – 16).

A physical RFC was completed by state agency evaluator Paul Fox, M.D. on March 17, 2010 following a review of the medical evidence in Plaintiff's file. (R. at 476 – 82). Dr. Fox diagnosed Plaintiff with lumbar spondylolisthesis. (R. at 476 – 82). Dr. Fox felt that his assessment of Plaintiff's ability to work was fairly consistent with earlier findings by Dr. Liszewski, although Dr. Liszewski's above assessment obviously could not have been considered. (R. at 476 – 82). Dr. Fox believed that Plaintiff was able to engage in somewhat limited activities of daily living, and had seen significant improvements in pain and functionality as a result of her back operations. (R. at 476 – 82). Specifically, Dr. Fox opined that Plaintiff was capable of occasionally lifting 10 pounds, frequently lifting significantly less than 10 pounds, standing and walking 2 hours of an 8 hour workday, and sitting 6 hours. (R. at 476 – 82). She could only occasionally climb, balance, or stoop, and could never kneel, crouch, or crawl. (R. at 476 – 82). Plaintiff was otherwise unlimited.

When deciding that Plaintiff was not disabled, the ALJ relied primarily upon the RFC assessment of Dr. Fox. He noted its general consistency with the findings of Dr. Liszewski, as well as the objective evidence provided to support it. (R. at 27 – 28). He did not give full weight to Dr. Liszewski's functional assessment and disability assertions because these were not accompanied by objective evidentiary support. (R. at 27 – 28).

15

The Court notes that a treating physician's opinions may be entitled to great weight – considered conclusive unless directly contradicted by evidence in a claimant's medical record – particularly where the physician's findings are based upon "continuing observation of the patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F. 3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348, 1350 (3d Cir. 1987)). However, "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (quoting *Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)). A showing of contradictory evidence and an accompanying explanation will allow an ALJ to reject a treating physician's opinion outright, or accord it less weight. *Brownawell*, 554 F. 3d at 355. Moreover, a medical opinion is not entitled to any weight if unsupported by objective evidence in the medical record. *Plummer*, 186 F. 3d at 430 (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)). The determination of disabled status for purposes of receiving benefits – a decision reserved for the Commissioner, only – will not be affected by a medical source simply because it states that a claimant is disabled or unable to work. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

The ALJ relied upon the findings of Dr. Fox, which were fairly similar to those of Dr. Liszewski. He also extensively reviewed the medical record and found that no other treating sources provided conflicting functional limitations findings, that the objective medical evidence did not match the severity of Plaintiff's subjective complaints, that Plaintiff still engaged in household chores, socialized, cared for herself and a disabled cousin, and could utilize transportation independently, and his RFC accommodated almost all limitations provided by Dr. Liszewski – some of which were more severe than those found by Dr. Fox. (R. at 24 – 28).

Additionally, Dr. Liszewski did not provide objective support for those few limitations not included. (R. at 24 – 28). As such, the Court holds that the ALJ satisfactorily supported his determination with substantial evidence. His decision will not be disturbed.

## VI.    CONCLUSION

Based upon the foregoing, the court finds that substantial evidence supported the decision of the ALJ finding Plaintiff not disabled under the Act. Accordingly, Plaintiff's Motion for Summary Judgment will be denied; Defendant's Motion for Summary Judgment will be granted; and, the decision of the ALJ will be affirmed. An appropriate Order follows.

<em><u>/s Arthur J. Schwab</u></em>
Arthur J. Schwab
United States District Judge

cc/ecf:  All counsel of record.